UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DONALD RAY CHURCH, | ) |
| Petitioner, | ) |
| vs. | ) Case No. 4:12-CV-1374 (CEJ) |
| LARRY DENNEY, | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the petition of Donald Church for a writ of habeas corpus pursuant to 28 U.S.C. §2254. Respondent has filed a response in opposition. Petitioner has not filed a reply, and the time allotted to do so has expired.

I.     **Procedural Background**

Petitioner Donald Church is currently incarcerated at the Crossroads Correctional Center located in Cameron, Missouri, pursuant to the sentence and judgment of the Circuit Court of the City of St. Louis. On October 22, 2008, a jury found petitioner guilty of one count of forcible rape, two counts of forcible sodomy, one count of kidnapping, one count of first-degree robbery, and five counts of armed criminal action. Resp. Ex. A. On December 19, 2008, petitioner was sentenced as a persistent sexual offender to consecutive terms of imprisonment on all charges, resulting in an aggregate term of life imprisonment. Id.

The Missouri Court of Appeals affirmed petitioner's convictions on December 8, 2009. Resp. Ex. E; State v. Church, 298 S.W.3d 585 (Mo Ct. App. 2009). On March 31, 2010, petitioner filed a *pro se* motion for post-conviction relief under Missouri Supreme Court Rule 29.15. Resp. Ex. F. On July 6, 2010, petitioner, through counsel, filed an amended motion under Rule 29.15. Id. An evidentiary hearing was held on

December 7, 2010, and continued on March 1, 2011. Resp. Ex. J. On May 24, 2011, the court denied the motion for post-conviction relief. Resp. Ex. F. at 79-86. Petitioner appealed, and on April 17, 2012 the Missouri Court of Appeals affirmed. Resp. Ex. I.

In the instant § 2254 petition, petitioner asserts nine grounds for relief: (1) that his trial counsel was ineffective for failing to call Terrell Gholson as a witness; (2) that the trial court erred in denying his motion for a mistrial when the prosecutor, in closing argument, alluded to the fact that petitioner did not testify in his own defense; (3) that the trial court erred in denying his motion for mistrial when a juror disclosed that he was personally acquainted with a witness for the prosecution; (4) that the trial court abused its discretion by admitting testimony about the CODIS DNA match because such testimony implied that petitioner had a prior criminal record; (5) that the prosecutor engaged in improper personalization during closing argument; (6) that evidence should have been excluded because it was the product of an unlawful search and seizure; (7) that the trial court's determination that petitioner should be sentenced as a persistent sexual offender was improper; (8) that the trial court erred in allowing the prosecutor to argue that the victim was happy and healthy prior to the crime; and (9) that the trial court improperly admitted bolstering evidence.

II. Background

At approximately 11:00 p.m. on February 12, 2007, Nicholas Althoff was walking to his apartment building when petitioner approached him and asked where he could find a woman. Althoff told petitioner to try a bar, but petitioner said, "that's not what I mean, I'm looking for a woman." Althoff left petitioner, went into his apartment

building, and told his female friends to be careful on their way home, because there was a strange man outside.

Meanwhile, N.S., who lived with her boyfriend in an apartment across the street from Althoff's apartment, arrived home around 11:00 p.m. When she reached the second floor of her building, petitioner approached her and asked if she had any money. When she said no, petitioner showed her a gun. She gave him money, and he told her that he needed a ride somewhere. N.S. tried to give petitioner her car keys, but he insisted that she come with him.

N.S. drove petitioner as he directed her. Petitioner had N.S. stop the car in multiple places. He forced N.S. to smoke crack cocaine, threatened to kill N.S. when she tried to avoid inhaling the crack because she was pregnant, and eventually forced N.S. to strip to her underwear. He hit her on the head with the gun when she did not undress quickly enough. Petitioner had N.S. perform oral sex on him, holding her head down to his penis with one hand and holding the gun in the other. Petitioner put his hand and then his penis into her vagina. After petitioner ejaculated, N.S. asked to go home and promised that she would not tell anyone about the rape. Petitioner let N.S. go, but said that if N.S. told anyone about what happened, he would have his "boys" hurt her. As N.S. drove home, she called her boyfriend and told him to call the police because she had been raped. N.S. was crying when she arrived home. The police took N.S. to the hospital, where a rape kit was collected.

On February 14, 2007, police officers pulled over a vehicle for a traffic violation. Petitioner was the driver, and a gun was in the car. The officers arrested petitioner for unlawful use of a weapon. A week later, the officers received a CODIS DNA hit, matching petitioner's DNA to that gathered from N.S.'s rape kit. N.S. identified

petitioner from a photo lineup as the man who raped her, and Althoff identified petitioner as the man he had seen on the night of the rape. N.S. also identified the gun found in petitioner's car as the one used during the kidnapping and rape. Petitioner's fingerprints matched those found on the handle of N.S.'s car, and his seminal fluid was found on the rear passenger seat and floor mat, on N.S.'s underwear, and on a swab from N.S.'s buttocks.

### III. Legal Standard

Federal courts may not grant habeas relief on a claim that has been decided on the merits in state court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d)(1)-(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." Id.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Payton, 125 S. Ct. at 1439; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 406. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410-11).

A state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1); Ryan v. Clarke, 387 F.3d 785, 790 (8th Cir.2004). "[T]he prisoner has the burden of rebutting the presumption of correctness by clear and convincing evidence." Barnett v. Roper, 541 F.3d 804, 811 (8th Cir. 2008).

## IV. Discussion

### A. Ground One

Petitioner claims that his trial counsel was ineffective for failing to call Terrell Gholson to testify. He argues that Gholson's testimony would have supported his defense that the sexual encounter with N.S. was consensual.

In order to state a claim of ineffective assistance of trial counsel, petitioner must meet the Strickland standard: petitioner must demonstrate that his counsel's performance was deficient and that he was prejudiced by that performance. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficient representation means counsel's

conduct fell below the conduct of a reasonably competent attorney. Strickland, 466 U.S. at 687. To establish prejudice, petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

To determine if a defendant was prejudiced by the failure of counsel to call a witness, a court adds that witness's proffered testimony to the evidence that was before the jury, and determines what the likely outcome of the trial would have been, based on the totality of the evidence. See Williams v. United States, 452 F.3d 1009, 1013 (8th Cir. 2006). Factors to consider include "(1) the credibility of all witnesses, including the likely impeachment of the uncalled defense witnesses; (2) the interplay of the uncalled witnesses with the actual defense witnesses called; and (3) the strength of the evidence actually presented by the prosecution." McCauley-Bey v. Delo, 97 F.3d 1104, 1106 (8th Cir. 1996), *cert. denied*, 520 U.S. 1178 (1997). If the government's case "remains overwhelming" even after considering the testimony of the uncalled witness, there can be no prejudice. Id.

Petitioner raised his claim of ineffective assistance in his amended post-conviction motion, and the state court held an evidentiary hearing at which petitioner, petitioner's trial counsel, and Gholson testified. Resp. Ex. J. Trial counsel testified that he attempted to contact Gholson on several occasions without success. Gholson arrived at trial during the prosecution's case in chief, and counsel spoke with him and asked him to return the next day, but did not subpoena him. Gholson did not return to court the next day.

At the time of the motion hearing, Gholson was being detained in the St. Louis County jail on a "Federal hold." He testified to having convictions for drug trafficking,

drug possession, and unlawful use of a weapon. He stated that he once lived in the same apartment building as N.S. and that he sold drugs to her. He claimed that N.S. offered him sexual favors in exchange for drugs, but he declined. He testified that he introduced petitioner and N.S., and saw N.S. and petitioner go to the basement of the apartment building to smoke crack together. On the night of the rape, petitioner told Gholson that N.S. was going to drive him somewhere. Finally, Gholson explained that when he arrived at petitioner's trial, he gave petitioner's counsel his cell phone number. He thought that counsel would call his phone if he had to testify, but counsel never did. Resp. Ex. J.

The motion court denied petitioner's claim. That court reasonably determined that Gholson was not a credible witness, and even if he was, his proposed testimony would not have resulted in a different outcome. Considering Althoff's testimony regarding petitioner's behavior shortly before the rape, N.S.'s testimony regarding her experience that night, the accounts of N.S.'s demeanor after the rape from police officers and N.S.'s boyfriend, and the physical evidence, this Court agrees that there is no reasonable probability that the proposed testimony of Gholson might have altered the outcome of the trial. The state court's determination that petitioner was not prejudiced by counsel's failure to call Gholson was reasonable. Petitioner is not entitled to relief on this ground.

### B. Ground Two

Petitioner argues that the trial court erred in denying his motion for a mistrial based on improper closing argument by the prosecutor.[1] During the closing argument,

---

[1] To the extent that petitioner argues that the trial court erred under state law in denying the motion for mistrial, his claim is not cognizable. Estelle v. McGuire, 502 U.S. 62, 68 (1991).

the prosecutor stated that, "defense counsel is going to get up here and argue that this was a consensual evening between [petitioner] and [N.S.]. There is nothing to suggest that that is the case." Resp. Ex. A at 525. Defense counsel objected to the argument as an "indirect reference to the failure to testify," and requested a mistrial. Id. at 526. The court sustained the objection, and instructed the jury to disregard that portion of the argument, but denied the request for a mistrial. Then, in rebuttal closing argument, the prosecutor stated that defense counsel's argument "is absolutely ridiculous, and they are grasping at straws. Can't say I didn't do it, because my DNA's there. And let's ignore the facts altogether of the gun." Id. at 546-47. Again, defense counsel objected and requested a mistrial. The court sustained the objection, instructed the jury to disregard the prosecutor's statement, but denied the motion for a mistrial.

The Fifth Amendment proscription against compulsory self-incrimination prevents a prosecutor from directly commenting on a defendant's failure to testify. Griffin v. California, 380 U.S. 609, 615 (1965). Indirect comments on a defendant's failure to testify also violate the Constitution "if they manifest the prosecutor's intent to call attention to a defendant's failure to testify or would be naturally and necessarily taken by a jury as a comment on the defendant's failure to testify." Robinson v. Crist, 278 F.3d 862, 866 (8th Cir. 2002).

The Missouri Court of Appeals concluded that the challenged statements, viewed in context, referred to the lack of evidence supporting petitioner's defense and not to his failure to testify. "In general, the government may comment on the failure of the defense, as opposed to the defendant, to counter or explain the evidence [unless] the jury would naturally and necessarily take it to be a comment on the failure of the

accused to testify." United States v. Gardner, 396 F.3d 987, 991 (8th Cir. 2005) (citation omitted). "The question is not whether the jury possibly or even probably would view the challenged remark in this manner, but whether the jury necessarily would have done so." Id. Considering the challenged statements in context, the state court reasonably concluded that petitioner's constitutional rights were not violated. Accordingly, relief will be denied on this ground.

### C. Ground Three

Petitioner contends that the trial court's failure to declare a mistrial after Juror 1204 disclosed that he was acquainted with a witness deprived him of a fair trial by an impartial jury.[2]

After the prosecution rested its case, Juror 1204 told the deputy that he recognized one of the State's witnesses, a lab analyst named Jenna Oakes-Smith. The juror was brought before the court, and explained that he knew Oakes-Smith from volleyball and soccer. During voir dire, the juror stated that he knew someone named Jenna, but he did not know her last name. Consequently, the juror did not respond when Oakes-Smith's name was mentioned as a potential witness. The juror stated that his relationship with Oakes-Smith would not affect his ability to decide the case based on the evidence, and the court instructed the juror to return to the jury room and say nothing to the other jurors. The defense later moved for a mistrial because Juror 1204 had an opportunity to talk to other jurors and taint the jury with his knowledge of the witness. The court denied the motion but "in an abundance of caution" removed Juror 1204 from the jury and replaced him with an alternate juror. Resp. Ex. A at 491- 93; 505.

---

[2] Again, to the extent that petitioner argues that the trial court erred under state law in denying the motion for mistrial, his claim is not cognizable. Estelle, 502 U.S. at 68.

The Sixth and Fourteenth Amendments guarantee the right to an impartial jury. Ross v. Oklahoma, 487 U.S. 81, 85 (1988). However, petitioner has failed to demonstrate that he was deprived of this right. The Missouri Court of Appeals reasonably found nothing to suggest that Juror 1204 was influenced by his acquaintance with the witness, or that he intentionally hid the acquaintance during voir dire. Furthermore, because the juror was removed from the jury prior to deliberations, he had no opportunity to discuss anything related to the case - including the testimony of Oakes-Smith - with his fellow jurors. A new trial is not required every time a potential juror bias is uncovered during trial. See Smith v. Phillips, 455 U.S. 209, 218 (1982). In this case, the trial court decided that the appropriate remedy was to remove the juror. Because there is no showing that the juror contaminated the panel prior to his removal, petitioner cannot show prejudice. Accordingly, relief on this ground will be denied.

D.     Ground Four

Petitioner argues that the trial court abused its discretion by admitting testimony about the CODIS DNA match because the testimony implied that petitioner had a criminal history.

Admissibility of evidence is generally a matter of state law, and claims of error of state law are not cognizable in federal habeas proceedings. See Scott v. Jones, 915 F.2d 1188, 1190 (8th Cir. 1990). Petitioner claims that the trial court's evidentiary ruling resulted in a denial of due process. This is a cognizable claim, but in order for the claim to succeed, the trial court's ruling must be "so 'gross,' 'conspicuously prejudicial,' or otherwise of such magnitude that it fatally infected the trial and failed to afford petitioner the fundamental fairness which is the essence of due process."

Wood v. Lockhart, 809 F.2d 457, 460 (8th Cir. 1987) (internal citations omitted). Petitioner argues that the admission of CODIS evidence created a "presumption of guilt" by suggesting to the jury that he was prior offender. However, as the Missouri Court of Appeals noted when reviewing this claim, there was nothing in the challenged testimony that suggested that a CODIS hit was indicative of prior crimes, and the average layperson is unfamiliar with CODIS and would not independently draw that conclusion. The limited testimony regarding CODIS did not compromise the fairness of petitioner's trial and does not rise to the level of a due process violation. Accordingly, relief on this ground will be denied.

E. Ground Five

Petitioner argues that the prosecutor engaged in improper personalization during closing argument. "Improper argument violates due process when the argument is so egregious that it renders the entire trial fundamentally unfair." Rodden v. Delo, 143 F.3d 441, 446 (8th Cir. 1998). However, petitioner has not shown that the challenged portion of the State's argument was indeed personalization, or rose to the level of a due process violation.

During summation, the prosecutor stated:

> Is he going to kill me? Are my parents going to find my body somewhere in a ditch? What's going to happen to my baby? Am I going to live through this night? Imagine what that night was like for [N.S.]. [N.S.] thought it was a night just like any other…. And it turned into a night of sheer terror, desperation, fear, and left her with something that she can never forget.

Resp. Ex. A at 518-19. The Missouri Court of Appeals determined that the argument was not improper, because the prosecutor did not ask the jurors to put themselves in the place of the victim, but rather to consider what the victim was thinking in order to emphasize that the encounter was non-consensual. Resp. Ex. E. Petitioner has not

shown the argument to be improper personalization, and certainly has not shown that the argument rises to the level of a due process violation. Thus, petitioner is not entitled to relief on this ground.

F. Grounds Six through Nine

Petitioner's remaining claims were raised in his motion for a new trial (which was denied), but not on direct appeal. Resp. Ex. C. Under Missouri law, when a defendant fails to brief or argue points raised in a motion for a new trial again on direct appeal, those points are deemed waived. See State v. Brown, 527 S.W.2d 15, 16 (Mo. Ct. App. 1975). Therefore, petitioner has defaulted on his remaining claims and an independent and adequate state procedural bar prevents the Court from considering those claims on the merits. See McDonald v. Delo, 897 F.Supp. 1224, 1259 (E.D.Mo. 1995) (finding a procedural bar when petitioner raised a claim in a motion for a new trial, but failed to include the claim on direct appeal).

In order to overcome procedural default, petitioner must show cause and prejudice or actual innocence. See U.S. v. Moss, 252 F.3d 993, 1001 (8th Cir. 2001) (citing Bousley v. United States, 523 U.S. 614, 621 (1998)). Petitioner explains that he did not raise grounds six through nine on direct appeal or during post-conviction proceedings because his attorneys "wanted to deal with specific grounds; not *all* grounds." Petitioner does not suggest that his attorneys were ineffective for excluding these grounds - and even if he did, the performance of post-conviction counsel may qualify as "cause" only in limited circumstances not applicable to this case. See Coleman v. Thompson, 501 U.S. 722, 752 (2011); Maples v. Thomas, 132 S.Ct. 912, 922 (2012); Martinez v. Ryan, 132 S.Ct. 1309, 1315 (2012).

Because petitioner's remaining claims are procedurally defaulted, and he has not shown cause and prejudice or actual innocence, the Court will not address these claims on the merits.

V. **Conclusion**

For the reasons discussed above, the Court finds that petitioner has failed to establish that he is entitled to relief based on state court proceedings that were contrary to, or an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of the facts in light of the evidence presented in state court proceedings. 28 U.S.C. § 2254(d). Because petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997).

A separate judgment in accordance with this Memorandum will be entered this same date.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 13th day of May, 2014.